(C.D. 3996)

DEERE & COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 10, 1970)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Richard C. King* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Robert T. Richardson* and *Herbert T. Posner*, trial attorneys), for the defendant.

Before RAO, FORD, and MALETZ, Judges; RAO, C.J., and FORD, J., concurring

MALETZ, Judge: Cylinder heads and cylinder blocks imported by plaintiff from Argentina were entered at the port of New Orleans in October 1967. The importations were classified by the government as parts of internal combustion engines under item 660.54[1] of the Tariff Schedules of the United States and assessed duty at the rate of 10 percent ad valorem.

They are claimed by plaintiff to be entitled to entry free of duty under item 692.30[2] as parts of tractors suitable for agricultural use. As predicate for this claim, plaintiff states that because of the unique design of the tractor, it does not contain an "engine" as such; and since there is no "engine" as such, there can be no parts of engines. Hence plaintiff concludes that the imported articles are not parts of internal combustion "engines" but rather are parts of tractors.

In support of its position plaintiff produced two witnesses who testified to the following effect: The imported cylinder heads and blocks are dedicated to use solely with the John Deere & Company tractor, Model 730. This model tractor is designed in such a way that there is no stage in the assembly where, in the witnesses' view, there is an engine per se. On the Model 730 the crankshaft, the oil pump, camshaft and transmission are all in one assembly which is a combination crankcase and transmission case. Because of this design the tractor must be almost completely assembled before those portions or parts which comprise the internal combustion power unit can be operated. In that way the power unit of the Model 730 is different than most "conventional" types of tractor engines which are separate entities and as such can be taken out of the tractor and tested separately.

---

[1] Tariff Schedules of the United States, Schedule 6, Part 4, Subpart A— Internal combustion engines and parts thereof:

  *   *   *   *   *   *   *

   Parts:

    *   *   *   *   *   *   *

    Other parts:

     *   *   *   *   *   *   *

   660. 54    Other _____ 10%   ad   val.

[2] Tariff Schedules of the United States, Schedule 6, Part 6, Subpart B— Tractors (except tractors in item 692.40 and except automobile truck tractors), whether or not equipped with power take-offs, winches, or pulleys, and parts of such tractors:

   692.30    Tractors suitable for agricultural use, and parts thereof_____    Free

The testimony further showed that the crankshaft on the Model 730 is located in the combination crankcase-transmission case, and the imported cylinder block is attached to this crankcase-transmission case; the cylinder head, in turn, is attached to the cylinder block. According to plaintiff's witnesses, the cylinder head and block cannot be combined into a separate workable engine because they lack the necessary supporting members of the crankcase-transmission case, and other parts. There is no separate engine as such which Deere buys, sells or installs in the Model 730, and the tractor must be completely assembled before the engine can be operated.

In essence, the testimony of the witnesses indicated that while conventional engines may be sold separately and used or tested independently of the vehicles for which they were designed, the power plant of the Model 730 tractor is such that neither the power unit nor the tractor has any existence independent of the other.

On the question of suitability for agricultural purposes, one of the witnesses testified that he has personally seen 200–300 of the Model 730 tractors used on farms for plowing, planting, cultivating, harvesting and other farm tasks, and he knew of no other use for such tractors other than on a farm.

Based upon these facts plaintiff makes the following arguments: (1) The common meaning of the term "engine," as used in item 660.54, is applicable only to *independent* power sources classified by type and cannot be expanded to include power units which contain related mechanisms, such as the integral transmissions and the other necessary parts of the Model 730 tractor; (2) the pre-existing material doctrine supports the contention that an "engine" as such must exist before there can be a part thereof; (3) the imported parts are dedicated solely to use with the Model 730 tractor which is "suitable for agricultural use," and thus they are parts of a tractor suitable for agricultural use.

With regard to plaintiff's first argument, we find no precedent indicating that the elements which make up the internal combustion engine of a tractor must be an independent power source (i.e., capable of being removed as a unit from the tractor for testing or replacement). In one case, the internal combustion engine has been defined as: "* * * [one] in which heat is added to the working agent * * * by the combustion of a gaseous liquid or pulverized solid fuel within the cylinder, and converted into mechanical work through a piston." *Palmer* v. *Sun Oil Co.*, 78 F. Supp. 38, 53 (D.C. Ohio 1948). In another case, the internal combustion engine was defined as one "in which the fuel charge, consisting of a combustible gaseous mixture, is ignited and exploded inside of the engine; the sudden explosion of the

gases producing the combination serving to force down the piston in the cylinder, which imparts motion to a crank shaft or other part." *Barber* v. *Otis Motor Sales Co.*, 271 F. 171, 173 (2d Cir. 1921). The word "engine" by itself has been defined in two separate cases in the following identical language: "An ingenious or skillful contrivance used to effect a purpose." *Lefler* v. *Forsberg*, 1 App. D.C. 36, 41 (1893), and *Haddad* v. *Commercial Motor Truck Co.*, 146 La. 897, 84 So. 197, 198 (1920).

*Webster's Third New International Dictionary of the English Language* (1963) defines "engine" as:

> a mechanical contrivance or tool * * * a machine for converting energy (in such forms as heat, chemical energy, nuclear energy, radiation energy, and potential energy of elevated water) into mechanical force and motion.

*Britannica World Language Dictionary* (1963) defines "engine" as:

> A machine by which energy is applied to the doing of work, notably one that converts heat energy into mechanical work: a steam *engine*, gas *engine*, etc.

*The McGraw-Hill Encyclopedia of Science and Technology*, Vol. 4, p. 603–604 (1966), defines "engine" as:

> A machine designed for the conversion of energy into useful mechanical motion. The principal characteristic of an engine is its capacity to deliver appreciable mechanical power, as contrasted to a mechanism such as a clock or analog computer whose significant output is motion. By usage an engine is usually a machine that burns or otherwise consumes a fuel, as differentiated from an electric machine that produces mechanical power without altering the composition of matter.

> \*       \*       \*       \*       \*       \*       \*

> Despite all the variation in structure, mode of operation, and working fluid—whether of moving parts, moving fields, or only moving working fluid—these machines are basically means for converting heat energy into mechanical energy.

The internal combustion engine is defined as follows by the cited authorities:

*Webster's New International Dictionary*, Second Edition (1948):

> internal-combustion engine–*Mach.* A heat engine in which the pressure necessary to produce motion of the mechanism results from the ignition or burning of a fuel-air mixture within the engine cylinder. The gas used may be a fixed gas, or one derived from alcohol, ether, gasoline, naphtha, oil (petroleum), etc. Internal-combustion engines may be classified, according to the kind of fuel used as (1) gas engines * * * (2) gasoline engines * * * (3) oil engines.

*Britannica World Language Dictionary* (1963) :

internal combustion * * * *adj.* Designating a type of engine in which the energy is produced by burning or exploding a mixture of compressed air and fuel, as gasoline, in one or more of its cylinders.

*The McGraw-Hill Encyclopedia of Science and Technology*, Vol. 7 (1966), pp. 196–97:

### Internal combustion engine

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

#### ENGINE TYPES

Characteristic features common to all commercially successful internal combustion engines include (1) the compression of air, (2) the raising of air temperature by the combustion of fuel in this air at its elevated pressure, (3) the extraction of work from the heated air by expansion to the initial pressure, and (4) exhaust.

These definitions make clear that an internal combustion engine is one which converts energy from the heat generated by burning fuel mixed with air into mechanical force and motion. Thus, the determinative factor in deciding whether an article is an engine is the *function* the article performs. Nowhere in the cited definitions is there included the requirement that to be considered an "engine" the article must be capable of functioning apart from an object on which it acts as a source of energy.

In the present case, there is no question that the power utilized by the Model 730 tractor is supplied by internal combustion. True an "engine" that is capable of functioning on many objects, i.e., a conventional engine, may possess greater utility than the power plant in the Model 730. But this factor does not divest the power plant of the Model 730 of its status as an "engine." Granted the power plant in the Model 730 is unconventional, nevertheless it is still an "engine" since it is a device which converts heat energy into mechanical force and motion.

Nor does the pre-existing material doctrine have any bearing in the present case, as plaintiff contends. That doctrine requires that the *material* out of which an article is made must have a prior, separate and independent existence in order to satisfy statutes which contain such terms as "made of," "manufactured of," or "composed of." See e.g., *Jacques Isler Corp.* v. *United States*, 63 Cust. Ct. 283, C.D. 3909, 306 F. Supp. 452 (1969), appeal pending. The doctrine plainly has no application here—even by analogy—since (as discussed above) it is not necessary that the article have an independent existence from the trac-

tor to constitute an engine; what is necessary is that it be a device which converts energy into mechanical force and motion.

Lastly plaintiff places heavy reliance on *Gallagher & Ascher Company* v. *United States*, 63 Cust. Ct. 223, C.D. 3899 (1969), in which cylinder plugs and keys for use with locking gas caps were held to be parts of motor vehicles rather than parts of locks and lock keys upon the ground, among others, that "[t]here is no component which is a lock *per se*" because "the individual identities and functions of the components have been subordinated to or merged in the identity and function of the combined entity. Therefore, the entire article—the locking gas tank cap—is an entirety for tariff purposes * * * [that] has two functions which are co-equal * * *." (Slip op. Oct. 14, 1969, pp. 7–8.) But the situation here is quite different. For here, the power plant of the Model 730 has not been subordinated and merged with the identity and function of the combined entity (the tractor) in such a fashion as to lose its identity and character as an internal combustion engine. In contrast to the article involved in *Gallagher & Ascher*, we have here not a multifunction article but a tractor with an unconventional power unit. Indeed, in the last analysis, all plaintiff has shown is that under the particular design of the Model 730 tractor, certain parts such as the crankshaft, oil pump, camshaft and transmission have been placed in close proximity to the parts of the internal combustion engine so that they are in a combination assembly. There is no indication that by such placement the individual identities and functions of the component parts placed therein have been merged into a combined article with a separate function or identity.

A tractor is made up of a myriad of parts and systems such as the suspension, transmission, lubricating cooling and exhaust systems. The placement of a part in the vehicle, however, cannot change the nature of that part in a particular system. Hence, a transmission part placed by design with the parts of the internal combustion engine still can function only with the transmission system. So, too, those parts dedicated to use as, and which function as, parts of internal combustion engines make up that engine.

The record, in short, demonstrates that the imported cylinder head and block here involved are parts of that combination of parts which make up the internal combustion power unit for the Model 730 tractor. And, as we have seen, this power unit is an internal combustion engine. This being the case, the cylinder and block are both parts of internal combustion engines and parts of tractors. However, "[w]here a particular part of an article is provided for specially, a part of that particular part is more specifically provided for as a part of the part than as a part of the whole." *Foster Wheeler Corp* v. *United States*, 61 Cust.

Ct. 166, 176, C.D. 3556, 290 F. Supp. 375 (1968). See also *C. F. Liebert* v. *United States*, 60 Cust. Ct. 677, 686, C.D. 3499, 287 F. Supp. 1008 (1968). Under these holdings, the provision for parts of internal combustion engines is more specific than the provision for parts of tractors suitable for agricultural purposes. Indeed in common parlance, the imported cylinder blocks and heads would be considered engine parts. *United States* v. *Ford Motor Company*, 51 CCPA 22, 26, C.A.D. 831 (1963).

The protest is overruled. Judgment will be entered accordingly.

### CONCURRING OPINION

Rao, Chief Judge: We concur in the result on the following grounds:

Since there is evidence that the John Deere Model 730 tractor is suitable for agricultural use, the only issue is whether the imported repair parts are classifiable as parts of internal combustion engines under item 660.54 of the Tariff Schedules of the United States, or as parts of tractors suitable for agricultural use, under item 692.30.

According to the record, the various parts that make up the tractor, including those which function to supply the power, are integral parts of the tractor without which it would not function. If the complete tractor were imported, it would be classifiable under item 692.30 as a tractor suitable for agricultural use, because it is an entirety and because of headnote 3 to schedule 6, part 4, which provides:

> 3. An electric motor or other power unit imported with a machine is classifiable with such machine as an entirety if fitted thereto when imported, or, if the machine or its framework is designed to receive the power unit, or if the shipment includes a common base designed to receive both the power unit and the machine.[1]

Since the imported articles are dedicated to use in the John Deere Model 730 tractor, they would be classifiable as parts of such tractors, unless more specifically provided for elsewhere in the tariff schedules.

Interpretative Rule 10(ij) provides:

> (ij) a provision for "parts" of an article covers a produce solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

The particular articles here involved are not themselves specially provided for in the tariff schedules, but internal combustion engines

---

[1] According to the Tariff Classification Study, Schedule 6, Part 4, p. 260, this principle applies with equal force to the provisions for machines provided for elsewhere in the tariff schedules.

are. The question is whether the imported articles are classifiable as parts of such engines.

In *Foster Wheeler Corp* v. *United States*, 61 Cust. Ct. 166, C.D. 3556, 290 F. Supp. 375 (1968), it was held that merchandise described as converter internals, catalyst basket and housing tube to be used in an ammonia synthesis unit, was dutiable as catalyst chambers or tubes, converters or parts thereof, under paragraph 319(b), Tariff Act of 1930, rather than as parts of machines under paragraph 372. The court stated (p. 176) :

> * * * Where a particular part of an article is provided for specially, a part of that particular part is more specifically provided for as a part of the part than as a part of the whole. Here, for instance, the converter internals do not become parts of machines until they are first parts of converters. Cf. *C. F. Liebert* v. *United States*, 60 Cust. Ct. 677, C.D. 3499. In fact, some of the parts here are specifically provided for *eo nomine* in paragraph 319(b), namely catalyst chambers or tubes.

In that case there was a specific piece of apparatus known as a converter which was used with other articles in an ammonia synthesis unit. The imported articles were parts of that converter. Also, there was legislative history from which it appeared that Congress intended to take the articles enumerated in paragraph 319(b) out of classification as machines in paragraph 372.

In the instant case there is no separable unit which constitutes the engine. There are, however, components which operating toegther supply power for the tractor. They function as an engine and have no other purpose. In common parlance, they would be considered engine parts. *United States* v. *Ford Motor Company*, 51 CCPA 22, 26, C.A.D. 831 (1963).

Congress has provided for free entry for tractors and parts thereof suitable for agricultual use in item 692.30. It has also provided specially in item 660.40 for the free entry of piston-type engines to be installed in tractors of a type provided for in item 692.30. However, it made no free entry provision for parts of such engines. It evidently intended parts of internal combustion engines to be dutiable, whether or not dedicated to use in engines to be installed in tractors suitable for agricultural use.

It is in accord with this intent to hold the instant articles dutiable as parts of internal combustion engines rather than free of duty as parts of tractors suitable for agricultural use. The fact that the components which furnish power to the tractor are so built in that they cannot be taken out as a unit does not make them any the less engine parts within the meaning of Congress.