(C.D. 4078)

## C. F. Liebert v. United States

United States Customs Court, Second Division

(Decided September 22, 1970)

*Glad & Tuttle* (*Edward N. Glad* and *Hudson F. Edwards* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Peter Jay Baskin*, trial attorney), for the defendant.

Before Rao, Ford, and Newman, Judges

Ford, Judge: This is a retrial of a case involving the same merchandise which was decided adversely to the plaintiff in *C. F. Liebert* v. *United States*, 60 Cust. Ct. 677, C.D. 3499, 287 F. Supp. 1008 (1968), which record has been incorporated herein. The above protests, consolidated for the purpose of trial, are directed against the classification of certain replacement parts under the provision for parts of clutches contained in item 680.54, Tariff Schedules of the United States, or as modified by T.D. 66–9 and assessed with duty at either 19 per centum or 15 per centum ad valorem, depending upon the date of importation.

It is the position of plaintiff that the imported merchandise is in fact parts of winches as prescribed by item 664.10, Tariff Schedules of the United States, and as such dutiable at the rate of 10.5 per centum ad valorem. This classification is urged on the theory that the im-

ported articles are parts of clutch assemblies and not parts of clutches since the clutch assembly is inserted into the winches and then adjusted and never becomes a clutch per se. Plaintiff did not argue this point in the incorporated case.

The pertinent portions of the statutory provisions involved herein read as follows:

680.54    Chain sprockets, clutches, universal joints,
             and parts thereof_____    19% ad val.

The rate of duty for item 680.54 was reduced to 15 per centum ad valorem by T.D. 66–9 for all merchandise entered or withdrawn from the warehouse for consumption from January 1, 1967, to December 31, 1967.

664.10    Elevators, hoists, winches, cranes, jacks,
             pulley tackle, belt conveyors, and other
             lifting, handling, loading, or unloading
             machinery, and conveyors, all of the
             foregoing and parts thereof not pro-
             vided for in item 664.05_____    10.5% ad val.

The record herein consists of the incorporated record and the testimony of Mr. William Bonar, who testified in the incorporated case, and the addition of two schematic drawings received in evidence as plaintiff's exhibits 6 and 7. In the decision of the incorporated case, the testimony taken therein was clearly set forth and we hereby adopt said digest.

In the case at bar, Mr. Bonar testified that he is familiar with the imported merchandise and it is the same is in the incorporated case. The merchandise consists of repair parts for the clutch or clutch assembly of models 8A or 8G winches. Both these winches were designed for use with small tractors having 50 horsepower engines or less. A compact unit was needed for these small tractors. The distinction between the model 8A and 8G was described by the witness. Model 8G uses a direct gear coupled drive which has a clutch assembly. It is not a friction type, has certain limitations, and is no longer used in swampy areas where it is subject to contamination by mud and water.

The winch operates from the power of the tractor, usually through the medium of a power take-off shaft. The power is transferred through the pinion gear to the crown gear which is riveted to the winch shaft. The winch shaft drives through the spider, which drives the clutch assembly which, when engaged, drives a drum that operates the cable in order to pull in the load.

The clutch assembly was designed to transmit the desired torque and yet was small enough to fit within the limited space which could be utilized. A friction type clutch which would fit within the space allocated could not transmit the necessary torque. In addition, it was nec-

essary to have a self-energizing drive assembly which would release under load.

Mr. Bonar was familiar with the way his plant assembles the clutch assembly. He testified that he would not be able to buy a clutch to fit his winches nor could he sell his clutch assembly as a clutch. The assembly procedure varies with the foreman on duty however, the witness stated, the clutch assembly could not be assembled by itself before putting it into the winch since it could only be adjusted and tested after the spider is inserted on the shaft.

Mr. Bonar described the function of a clutch as the connecting of a rotating drive member to a rotating driven member. The witness admitted his clutch assembly performs this function. The distinction between a clutch assembly and a clutch was explained by the witness as the latter being a complete unit whereas the former is assembled in the winch to allow it to perform the same function.

The decision of this court in the incorporated case held the imported articles to be parts of clutches under item 680.54, *supra*, rather than parts of winches under item 664.10, *supra*. The court in considering the competition of those provisions made the following observation:

> The competing provisions here are item 680.54 which covers clutches and parts and item 664.10 which covers winches and parts. General Interpretative Rule 10(ij), *supra*, provides that a provision for "parts" of an article does not prevail over a specific provision for such part. Under this rule the clutches involved herein would be classifiable under item 680.54 even though they were parts of winches. *J. E. Bernard & Co.* v. *United States*, 59 Cust. Ct. 31, C.D. 3060.

Keeping the above proposition in mind the issue presented in this matter while it differs from the original case involves the same competition and is governed by the same reasoning as set forth above.

Whether the imported articles are parts of clutches within the intendment of item 680.54, *supra*, is our first consideration. If they are parts of clutches, even if they are parts of winches, classification must be as the former by virtue of General Interpretative Rule 10(ij) as indicated, *supra*. The mere fact that the completed article is referred to by the witness as a clutch assembly or the fact that the article is not assembled and adjusted until it is incorporated in the winch does not detract from the imported articles being parts of clutches.

In *Deere & Company* v. *United States*, 64 Cust. Ct. 308, C.D. 3996 (1970), an importation of cylinder heads and blocks was classified as parts of internal combustion engines and claimed to be parts of tractors suitable for agricultural use. Plaintiff argued that by virtue of the design of the tractor there was not an internal combustion engine as such since the motor of which the imported heads and

blocks were parts, formed part of the tractor. The court in holding the parts involved to be parts of internal combustion engines made the following statement:

> These definitions make clear that an internal combustion engine is one which converts energy from the heat generated by burning fuel mixed with air into mechanical force and motion. Thus, the determinative factor in deciding whether an article is an engine is the *function* the article performs. Nowhere in the cited definitions is there included the requirement that to be considered an "engine" the article must be capable of functioning apart from an object on which it acts as a source of energy. [Emphasis quoted.]
>
> In the present case, there is no question that the power utilized by the Model 730 tractor is supplied by internal combustion. True an "engine" that is capable of functioning on many objects, i.e., a conventional engine, may possess greater utility than the power plant in the Model 730. But this factor does not divest the power plant of the Model 730 of its status as an "engine." Granted the power plant in the Model 730 is unconventional, nevertheless it is still an "engine" since it is a device which converts heat energy into mechanical force and motion.

Following this reasoning, it is readily apparent that parts of clutches which are assembled in the winch nevertheless perform the function of a clutch. This is admitted by the witness called on behalf of plaintiff. A clutch whether called a clutch assembly is nevertheless a clutch when it performs the function of a clutch.

The question raised by plaintiff that the clutch does not have a pre-existence as a clutch since it is assembled in the winch has no merit. The *Deere* case, *supra*, also considered this theory and directly disposed of it in the following manner:

> Nor does the pre-existing material doctrine have any bearing in the present case, as plaintiff contends. That doctrine requires that the *material* out of which an article is made must have a prior, separate and independent existence in order to satisfy statutes which contain such terms as "made of," "manufactured of," or "composed of." See e.g., *Jacques Isler Corp.* v. *United States*, 63 Cust. Ct. 283, C.D. 3909, 306 F. Supp. 452 (1969), appeal pending. The doctrine plainly has no application here—even by analogy—since (as discussed above) it is not necessary that the article have an independent existence from the tractor to constitute an engine; what is necessary is that it be a device which converts energy into mechanical force and motion. [Emphasis quoted.]

The next theory urged by plaintiff is that the imported parts when assembled constitute more than clutches since they are fully integrated into the winch, permit the winch to release under load which normally a self-energizing clutch will not do. Citing *United States* v.

*The A. W. Fenton Company, Inc.,* 49 CCPA 45, C.A.D. 794 (1962), and *Servo-Tek Products, Co., Inc.* v. *United States,* 61 Cust. Ct. 224, C.D. 3581, 291 F. Supp. 678 (1968), affirmed 57 CCPA 13, C.A.D. 969. We do not deem these cases controlling nor the principle applicable in the case at bar. There is nothing about the clutch of which the imported articles are parts, which expands the article beyond the confines of the function of a clutch. The witness admitted "It's a unique type of clutch assembly, the highly self-energizing feature and still be able to release it under constant load * * *." Plaintiff may have designed a better type of clutch for the intended purpose but it is for tariff purposes a clutch. Accordingly, the imported articles are parts of clutches and not parts of winches.

In view of the foregoing, it is unnecessary to consider the additional theories advanced by the parties.

The protests are therefore overruled. Judgment will be entered accordingly.