**MITSUBISHI ELECTRONICS AMERICA, INC.,**
Plaintiff,

v.

**UNITED STATES, Defendant.**

**Slip Op. 95–47.**
**Court No. 93–03–00160.**

United States Court of International Trade.

March 16, 1995.

Baker & McKenzie, Washington, DC (Thomas P. Ondeck, Kevin M. O'Brien, and Teresa A. Gleason); Matthew A. Joseph, Asst. Gen. Counsel, Mitsubishi Electronics America, Inc., Sunnyvale, CA, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Bruce N. Stratvert); Office of Asst. Chief Counsel, U.S. Customs Service (Karen P. Binder), Washington, DC, of counsel, for defendant.

## OPINION

GOLDBERG, Judge:

This matter is before the Court following trial *de novo*. The United States Customs Service ("Customs") classified the subject merchandise as a clutch, under subheading 8483.60.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Plaintiff, Mitsubishi Electronics America, Inc. ("Mitsubishi"), challenges Customs' classification of the merchandise, primarily arguing that the merchandise should be classified as a part of a starter motor, under subheading 8511.90.60 of the HTSUS. The Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988). Upon review of the evidence and testimony presented at trial, the Court finds that the subject merchandise is properly classified as a part of a starter motor.

## BACKGROUND

To understand the function of the merchandise at issue in this case, it is helpful to review the evolution of the merchandise. At trial, Mitsubishi's expert in the field of automotive engineering, Dr. Harold Schock, Jr., explained that the merchandise evolved in the following manner. When cars were invented, drivers used manual cranks to start their engines. In the early 1900s, an electromechanical starter motor replaced the manual crank. The starter motor used a mechanism known as a Bendix drive assembly ("Bendix") to engage the engine. A Bendix was basically a pinion gear that moved along a shaft in the starter motor, engaged the ring gear on the engine flywheel, turned the flywheel during ignition, and then disengaged from the flywheel. The merchandise at issue in this action eventually replaced the Bendix.

The parties agree that the subject merchandise is an assembly consisting of the following elements: (1) a toothed pinion gear; (2) a pinion sleeve; (3) a barrel with a helical spline; (4) a washer; (5) a cover; (6) five small rollers; (7) five small springs; (8) a nylon flange; and (9) a snap ring. *Pretrial Order*, Schedule C (*"Uncontested Facts"*) at 1. The parties also agree that one advantage of the subject merchandise over a Bendix is that it not only possesses a pinion gear, but it also possesses rollers and springs. The rollers and springs provide the merchandise with an overrunning clutch feature, which will be explained further below. *Id.*

Mitsubishi's expert witness on the subject of automobile starting systems, an engineer at Chrysler Corporation named Robert Hojna, testified as to how the merchandise works. When a driver turns the key in the ignition of his car, a solenoid switch pushes the merchandise forward until the merchandise's pinion engages the ring gear on the engine flywheel. The pinion then turns the engine flywheel. Once the engine starts running, the merchandise's overrunning clutch feature allows the pinion to freewheel for about one-tenth of a second; this prevents the starter motor from being accelerated to excessive speed and prolongs the life of the pinion. The solenoid switch then pulls the merchandise away from the engine flywheel.

Mitsubishi imports the subject merchandise from Japan exclusively for resale to Ford Motor Company. *Uncontested Facts* at 1. According to an Executive Vice President

at Mitsubishi, Keith Postell, Mitsubishi usually refers to the merchandise as a "starter drive assembly." Exhibits introduced by Mitsubishi at trial show that Ford Motor Company similarly refers to the subject merchandise as a "drive assembly" in its blueprints. According to the expert on starting systems, Mr. Hojna, engineers at Chrysler Corporation also refer to the subject merchandise as a "starter drive assembly."

Customs had classified the subject merchandise as a part of a starter motor in the past, according to the Executive Vice President at Mitsubishi, Mr. Postell. In 1990, however, Customs officials at the port of Detroit questioned whether the merchandise should be so classified. They requested clarification from a Customs Import Specialist in New York named Karl Riedl. Mr. Riedl decided to classify the merchandise as a clutch, under subheading 8483.60.40, HTSUS, with a duty rate of 5.7 percent *ad valorem.* At trial, Mr. Riedl testified that he based his decision on the following factors: (1) samples of the merchandise; (2) manuals depicting the merchandise; (3) his perception of the function of the merchandise; and (4) his lay knowledge of automobiles. He did not, however, have the opportunity to see the merchandise in action, i.e. engaging the engine flywheel.

The entries of merchandise at issue in this case were imported between February 1992 and June 1992. Customs classified these entries of merchandise as clutches under subheading 8483.60.40, HTSUS, with a duty rate of 5.7 percent *ad valorem.* Mitsubishi protested Customs' classification of its merchandise. After Customs denied Mitsubishi's protests, Mitsubishi filed suit in this Court.

At trial, Mitsubishi argued that Customs should classify its merchandise as "[e]lectrical ignition or starting equipment ... starter motors ... [p]arts," under subheading 8511.90.60, HTSUS, with a duty rate of 3.1 percent *ad valorem.* In the alternative, Mitsubishi asserted that Customs should classify

the merchandise as: (1) "[s]tarter motors and dual purpose starter-generators," under subheading 8511.40.00, HTSUS, with a duty rate of 3.1 percent *ad valorem;* or (2) "[p]arts and accessories of motor vehicles ... [c]lutches and parts thereof" under 8708.93.60, HTSUS, with a duty rate of 3.1 percent *ad valorem.* After Mitsubishi presented its case in chief, defendant argued that Customs' classification of the subject merchandise as a clutch was correct.

## DISCUSSION

Customs' classification of the merchandise as a clutch under subheading 8483.60.40 of the HTSUS is afforded a statutory presumption of correctness. 28 U.S.C. § 2639(a)(1) (1988). Mitsubishi bears the burden of overcoming this initial presumption. *Id.* To determine whether Mitsubishi has overcome the statutory presumption in favor of Customs, the Court will first consider whether the classification provision applied by Customs encompasses the subject merchandise. *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). The Court will then consider whether any of the alternative classifications proposed by Mitsubishi better describes Mitsubishi's imports. *Id.*

### A. Clutches.

Defendant maintains that Customs properly classified the merchandise as a clutch for several reasons. First, defendant argues that dictionaries define the term "clutch" so as to describe the subject merchandise. Second, defendant claims that because the merchandise possesses all of the components of an overrunning clutch, it belongs in the *eo nomine* provision for clutches, regardless of whether it possesses additional components. Third, defendant asserts that members of the clutch industry have examined the subject merchandise for this case, and they have identified the subject merchandise as a "clutch."[1]

---

1. At trial, defendant presented an expert in the field of mechanical engineering named Glenn Rightmire who testified that although he had never seen the merchandise prior to this case, he would categorize the merchandise as a clutch.

Defendant also presented a fact witness named Harry Swan who worked for a clutch manufacturer for 39 years. Mr. Swan testified that although he had never seen the merchandise prior

In order to rebut the presumption of correctness in favor of Customs, Mitsubishi argues that Customs has erred in classifying the subject merchandise as a clutch because the merchandise is more than an overrunning clutch. This Court has summarized the "more than" doctrine as follows:

When an article is in character or function something other than as described by a specific provision in the tariff schedule, either more limited or more diversified, and the difference is significant, it cannot be classified within that provision.

*Nestle Refrigerated Food Co. v. United States,* 18 CIT ——, ——, Slip Op. 94–118 at 6, 1994 WL 405009 (July 20, 1994) (*appeal filed* Dec. 15, 1994) (citing *Robert Bosch Corp. v. United States,* 63 Cust.Ct. 96, 103–04, C.D. 3881 (1969));[2] *see also Flex Track Equip., Ltd. v. United States,* 65 Cust.Ct. 119, 124, C.D. 4063 (1970) (holding that an item may have several features that permit it to serve multiple functions which, in sum, characterize the item more than any single feature), *aff'd,* 59 CCPA 97, 458 F.2d 148 (1972). Upon review of the evidence and testimony presented at trial, the Court agrees with Mitsubishi's contention that the merchandise is more than a clutch.

[4] Preliminarily, the Court notes that the dictionary definition of the term "clutch" does not aid in the classification of the subject merchandise. *Webster's Third New International Dictionary* (1993) defines a clutch as, among other things:

[A] coupling used to connect and disconnect a driving and a driven part of a mechanism esp. one that permits the former part to engage the latter gradually and without shock.

As Customs acknowledged at trial, under this definition a hand can theoretically qualify as a clutch when it serves as a coupling between a screwdriver and a person's arm. Because

the definition is vague and overly broad, the Court does not accord it significant weight. *Pfaff Am. Sales Corp. v. United States,* 17 CIT ——, ——, Slip Op. 93–101 at 8, 1993 WL 209619 (June 9, 1993); *see also Sumitronics Inc. v. United States,* 19 CIT ——, ——, Slip Op. 95–10 at 5, 1995 WL 45870 (Jan. 31, 1995) (citing *General Methods Corp. v. United States,* 59 CCPA 109, 112, 458 F.2d 521, 523 (1972) (tariff provisions do not necessarily include everything that falls within their literal meaning)).

The Court recognizes that the dictionary definition of "overrunning clutch" is more specific than the definition of "clutch." *Webster's Third New International Dictionary* (1993) defines an overrunning clutch as:

1: a clutch used in a starter that transmits cranking effort but overruns freely when the engine tries to drive the starter 2: a special clutch used in several mechanisms that permits a rotating member to turn freely under some conditions but not under others.

The Court finds, however, that the dictionary definition of "overrunning clutch" fails to describe the merchandise completely; rather, it describes one ancillary feature of the merchandise. The definition describes the springs and rollers that lay between the pinion sleeve and cover of the merchandise. These items transmit cranking effort and allow the merchandise to slip when the engine begins to drive the starter. They are not, however, the only elements of the merchandise.

Other significant elements of the subject merchandise are the pinion and the helical spline. Mitsubishi's expert witness, Dr. Schock, verified the significance of these elements by testifying that most of the design effort and the cost of manufacturing the subject merchandise go toward the production of

---

to his deposition, nor had he seen it in use, he would classify it as a clutch.

**2.** In *Robert Bosch Corp.,* 63 Cust.Ct. at 104, Customs had classified the solenoid switch used in a starter motor as an electrical switch under the Tariff Schedules of the United States. Plaintiff argued that the solenoid switch was more than an electrical switch because it not only caused electrical current to flow from the battery into

the ignition system, but it also mechanically engaged the starter motor and the engine flywheel, and this engagement made it possible for a car to start. The Customs Court agreed that the solenoid switch was more than an electrical switch and classified it as "other electrical starting and ignition equipment for internal combustion engines, and parts thereof."

the pinion and the helical spline. The pinion is cold-formed and precisely machined so that its teeth will mate with the engine ring gear without significant wear. The helical spline is also machined, and it is cut to precise rotational angles so that it can mate with an armature shaft extending from the motor. In contrast, the merchandise's cover, rollers, and springs are inexpensive, readily-available items, which require much less design effort than the pinion and spline.

Further, those who buy, sell, and work with the subject merchandise recognize it as more than an overrunning clutch. Mr. Postell, the Mitsubishi Vice President, testified that Mitsubishi normally calls the merchandise a "starter drive assembly." Mr. Hojna, the expert witness who works with automobile starting systems, also testified that he calls the subject merchandise a "starter drive assembly." This name acknowledges that the merchandise is an assembly of several elements that work together to start a car. At trial, witnesses presented by defendant as members of the clutch industry may have identified the merchandise as a "clutch." However, the Court finds it significant that these witnesses, who profess to have extensive knowledge of clutches, had never encountered the subject merchandise until they examined it for this case.

Moreover, as witnesses presented by both parties testified, the subject merchandise is an amplification of a Bendix, not an amplification of a clutch. Expert witnesses for Mitsubishi, i.e. Dr. Schock and Mr. Hojna, testified that the merchandise replaced the Bendix. They further testified that the merchandise could engage the ring gear on the engine flywheel even if it did not have an overrunning clutch feature. Similarly, Customs' Import Specialist, Mr. Riedl, testified that the merchandise is essentially a Bendix that has been enhanced by the addition of an overrunning clutch feature. He further testified that the merchandise performs the

same function as a Bendix, i.e. it works to start a car.

In summary, Customs' classification of the merchandise as a clutch improperly focuses on an ancillary feature of the merchandise. The merchandise's overrunning clutch feature merely allows the merchandise to slip for a fraction of a second after the pinion engages the engine flywheel, thereby prolonging the life of the pinion. Indeed, the merchandise could engage the flywheel even if it did not have an overrunning clutch feature. Consequently, the Court finds that the subject merchandise is more than an overrunning clutch. Mitsubishi has rebutted the presumption of correctness in favor of Customs' classification of the merchandise.

### B. Parts and Accessories of Motor Vehicles.

Having found that Mitsubishi has rebutted the presumption of correctness in favor of Customs' classification of the subject merchandise, the Court turns to consider whether the merchandise falls within any of the alternative classifications advanced by Mitsubishi. As one alternative, Mitsubishi had suggested that Customs should classify the merchandise as a part of a motor vehicle under subheading 8708.93.60, HTSUS, with a duty rate of 3.1 percent ad valorem. Mitsubishi only advanced this classification, however, as an alternative to be applied in the event that the Court were to find that the subject merchandise is a clutch.[3] Because the Court has found that the merchandise is more than a clutch, this alternative classification does not warrant further discussion.

### C. Starter Motors and Dual Purpose Starter–Generators.

Mitsubishi has suggested that the merchandise may be classified as "electrical ignition or starting equipment . . . starter motors and dual purpose starter generators," under subheading 8511.40.00, HTSUS, with a duty rate of 3.1 percent ad valorem. The Court disagrees. Parts of articles generally

---

3. The Court notes that if the subject merchandise is not a clutch, but rather a part of a starter motor, then it cannot be classified as part of an automobile, even though it is used solely in automobiles. This is because a subpart of a particular part of an article is more specifically provided

for as a part of the part than as a part of the whole. C.F. Liebert v. United States, 60 Cust.Ct. 677, 686–87, 287 F.Supp. 1008, 1014 (1968) (holding that parts of clutches which are parts of winches are more specifically provided for as parts of clutches than as parts of winches).

do not fall within an *eo nomine* or use category, such as subheading 8511.40.00, HTSUS, unless the category contains a specific provision for parts. *Lynteq, Inc. v. United States,* 10 Fed.Cir. (T) ——, ——, 976 F.2d 693, 697 (1992); *see also Westminster Corp. v. United States,* 78 Cust.Ct. 22, 26, 432 F.Supp. 1055, 1058 (1977), *appeal dismissed,* 64 CCPA 179 (1977) (citations omitted). Because the subject merchandise is only a part of a starter motor, and subheading 8511.40.00, HTSUS, does not contain a specific provision for parts, subheading 8511.40.00, HTSUS, does not apply in this case.

D. *Parts of Starter Motors.*

 Mitsubishi has also suggested that the subject merchandise falls within the HTSUS provision for parts of starter motors. A provision for parts of an article covers products solely or principally used as parts of such articles. *Additional U.S. Rule of Interpretation* 1(c). A provision for "parts" does not, however, prevail over a specific or *eo nomine* provision for such parts. *Id.; see also Robert Bosch Corp. v. United States,* 63 Cust.Ct. 187, 190–93, 305 F.Supp. 921, 923– 924 (1969) (discussing when a more specific provision preempts classification under a provision for parts).

In this case, the parties do not dispute that the subject merchandise is used solely in starter motors for automobiles. *Uncontested Facts* at 1. Indeed, Mitsubishi's expert witnesses, Dr. Schock and Mr. Hojna, testified that the merchandise is essential to the operation of such starter motors. Further, the merchandise is not completely described by a specific or *eo nomine* provision elsewhere in the HTSUS. *See supra* part A. Consequently, the Court finds that the merchandise is classifiable as a part of a starter motor under subheading 8511.90.60, HTSUS, dutiable at the rate of 3.1 percent *ad valorem.* Judgment will be entered accordingly.

## JUDGMENT