SERVO–TEK PRODUCTS CO., Inc.,
v.
UNITED STATES.

C.D. 3581;  Protest No. 66/773–21299–63.

United States Customs Court,
Second Division.

Oct. 7, 1968.

Siegel, Mandell & Davidson, New York City (Allan H. Kamnitz, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Arthur H. Steinberg, New York City, and Herbert Peter Larsen, New York City, trial attorneys), for defendant.

Before RAO, Chief Judge, and FORD, Judge.

FORD, Judge.

The merchandise involved in this case described as geared motors was imported from England and entered at the port of New York on May 16, 1963. It was assessed with duty at 12½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3468, 97 Treas.Dec. 157, T.D. 55615, as articles having as an essential feature an electrical element or device. Various claims were made in the protest all of which were abandoned except the claim that the merchandise is properly dutiable at 9½ per centum ad valorem under said paragraph 353, as modified by Presidential Proclamation No. 3512, 98 Treas. Dec. 28, T.D. 55805, as motors of more than ⅒ horsepower, but less than 200 horsepower.

Pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 353, as modified by T.D. 55615:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, all the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other &ast; &ast; &ast; (except &ast; &ast; &ast;) ...............12½%' ad val.

Paragraph 353, as modified by T.D. 55805:

Articles having as an essential feature an electrical element or device, such as electric motors &ast; &ast; &ast; wholly or in chief value of metal, and not specially provided for:

Motors of more than ⅒ horsepower but less than 200 horsepower ............................9½%' ad val.

————◆————

At the trial, Chester A. Palmieri, design engineer of Servo-Tek Products Co., Inc., testified that he had held that position for 16 years and had previously been employed as production tool engineer for 2 years. His duties include the design of products from the point of inception through final testing and also the examination of customers' orders and specifications. During the course of his employment he became familiar with geared motors by working with them and using them over a period of 16 years. He was shown the invoice accompanying the entry and stated that he was familiar with the items thereon. They are described on the invoices as follows:

D.C.SUPPLY. SHUNT WOUND. T. E.F.C. 3600/90 RPM. FRAME NO. DR. 5. GEARED MOTOR NOS. 37926/26.D.

D.C.SUPPLY. SHUNT WOUND. T. E.F.C. 3600/40 RPM. FRAME No. DR. 5. GEARED MOTOR NOS. 37927/27.B.

D.C.SUPPLY. SHUNT WOUND. T. E.F.C. 3600/18 RPM. FRAME NO. 25.4. GEARED MOTOR NOS. 37923/23.G.

D.C.SUPPLY. SHUNT WOUND. T. E.F.C. 3600/90 RPM. FRAME NO. 25.4. GEARED MOTOR NOS. 37925/25.F.

The witness testified that the first two were ½ horsepower motors and the last two ⅛ horsepower motors. He explained that D.C. meant direct current, Shunt Wound referred to field and armature parallel winding and T.E.F.C. meant a totally enclosed fan-cooled motor. He said that 3600 RPM was the armature speed and that 3600/90 meant the reduction speed was from 3600 through 90 RPM. That reduction was caused by the gear train on the motor.

The witness stated that a motor is a machine which converts electrical energy into mechanical energy and has a rotating shaft to operate at a given power. It consists of two important parts: The field (located within the frame of the motor), which can be either of a permanent magnet type or an electromagnet type, and the armature, which is the rotating member. A gear alone is a cog wheel, and a gear train is a series of gears in mesh, that is, the rotating parts driven by the prime mover (the armature), and an output shaft. A gear box is the frame into which a gear train fits.

Several exhibits illustrating the merchandise here involved were received in evidence: A picture of the complete geared motor (exhibit 1), a blueprint or drawing thereof (exhibit 2), and a picture illustrative of the inner parts of a geared motor (exhibit 3).

The witness pointed out the various parts of the motor on exhibit 2, marking separately the field, the armature, the bearings supporting the armature, and the shaft. He also marked the gear train and the output shaft thereof. He said that the gears for the DR. type equipment were a worm and worm gear combination and those for the type 25 were spur gears.

The witness explained that the gear box is attached to the motor by removing an end belt which is a part which encloses one end of the motor and assembling the gear box to that. If a proper pinion is absent from the motor shaft, it must be attached. Such a pinion would cost about $2.50. The work of assembly or disassembly would take 10 or 15 minutes.

Mr. Palmieri testified that a geared motor differs from an ungeared motor in that it has a gear train affixed to the motor and will drive at a slower speed and a higher torque. Its function is one which agrees with the definition of a motor. He explained that torque is a measure of force which is rotating and said that it was mechanically possible to reduce the speed and increase the torque of a nongeared motor by the use of a chain and sprocket drive, a V-belt pulley or timing belts. However, there were benefits in using a geared motor, such as flexibility, economy, compactness, and sales appeal.

According to the witness, his firm uses these geared motors as a component part in an electronic drive system which is called an adjustable speed drive system and which is sold commercially in the United States by Servo-Tek. They are made to the specifications of Servo-Tek and not those of any particular customer. They are not designed to go into a specific machine, but are designed to meet the requirement of a specific range of speeds and power outputs. Through the use of the system it is possible to maintain given speeds regardless of the load variation or line variation, that is, the input power variations. According to the witness, the geared motor is nothing more than the component part which provides or imparts motion to satisfy a customer's application. It performs the function of a motor imparting rotation to any mating part at a given force or power. He explained that a workable speed range of a nongeared motor would be from 36 RPM to 3600 RPM and that if a customer required something that was going to go as low as 3.6 RPM, a

ten to one gear reduction would be used to maintain the same speed range. Thus the customer would have a motor which would run from 3.6 RPM to 360 RPM. This type of gear arrangement which would be attached to the motor would depend upon the specific end use to be made by the customer.

According to the witness these geared motors are used in many applications, such as printing presses and pumps, and in the textile industry, in the glass industry, and in machine tools. Ungeared motors could also be used for these purposes and are so used to the knowledge of the witness. He added that the gear ratio in a particular geared motor would limit its application.

In the witness' opinion, the merchandise herein, such as that depicted on exhibit 1, is a motor. He said that basically what is being done is to transmit motion at a certain force and at a certain rate of speed which is at a certain power. He considered the gear train to be a part of the motor because the alpha shaft of the gear train turns at a prescribed speed and offers a sufficient amount of torque to complete the task for which it had been designed. It is in fact an extension of the armature shaft. He considered the gear box to be a built-in speed unit.

He testified:

Q. On what basis would you consider the gear box built in?—A. The fact that it is an integral part of that unit.

Q. What is it built into?—A. It is assembled to the armature shaft or the motor.

Q. Well, is it assembled to or built into the motor?—A. It is assembled to the motor.

Q. It is not really built in, is it?

\* \* \* \* \* \*

A. As to my understanding of the words "built in" I would have to say it is not built into the motor.

In the opinion of the witness a gear train is a part of a motor when it is assembled to it in a secure fashion. He did not consider it an accessory in this instance because the motor and gear are one unit.

The witness also testified that a motor is defined by just two things—the field and the armature. He added that the only other thing that might be important here is that there is a part which extends the motor, which is the part which is usable, and that is the shaft of the motor. He said that a geared motor differs from an ungeared motor in having a gear train affixed to the motor, but the motor itself is the same. It differs in use in that it will drive at a slower speed and a higher torque. The reduction in speed is not caused by anything in the motor itself but by the gear train. In fact, there are ungeared motors which are identical to the motors which came in with gear boxes in the instant case.

The witness did not know whether the advertising literature distributed by his company referred to the combination of the motor and gears as a machine. In his opinion, the combination was a machine. He did not know whether the imported motors and gears were ever sold in the trade as electric motors or whether they were sold as geared motors.

Mr. Palmieri was of the opinion that the gears in an automobile were not part of the motor, for the following reasons:

The gears in an automobile are set in a box, and are connected to a drive shaft of the engine. Through various other mechanical drive systems, which are between that drive shaft and that gear, there are clutches, in some cases there are torque converters that is not an integral part of that engine, and that engine cannot function and do the job unless that gear train is with it.

The witness was asked whether the motor proper in this case would not operate without the gear train, once it was assembled. He stated:

No, the motor certainly operates. If the motor didn't operate the gear train can't operate. The motor is the prime mover. That motor will oper-

ate vertically with or without that gear train affixed to it. It will do different things, but it will operate.

On the record presented, plaintiff claims that the articles involved herein fall within the provision for motors in paragraph 353, supra. It contends that the gears provide additional capabilities to the motors and that their presence does not make the articles more than motors. It is defendant's position, on the other hand, that the merchandise consists of electric motors plus power transmission attachments, making them suitable for specific uses and that such articles are not motors for tariff purposes.

It seems clear from the testimony and the exhibits that the merchandise involved herein is an assembly or unit consisting of a portion which the witness generally called the motor or the motor proper and another portion called the gear, gear box, or gear train. These portions are securely fastened together into a single operating unit. The function of the motor proper is to convert electrical energy into mechanical energy at an armature speed of 3600 RPM. The function of the gear train is to reduce the speed and increase the torque so that the assembly can be used to drive particular machines which require that speed and torque. The assembly is sold as a unit in Servo-Tek's adjustable speed drive system. The witness did not know whether it was sold in the trade as an electric motor or as a geared motor. He did not think that gears used with motors were in all cases parts of motors, but only when securely attached so as to form a unit. His own definition of a motor included as the principal parts the field and the armature and perhaps the shaft. An electric motor is defined as a device or machine which, receiving electrical energy, converts it into mechanical energy. Webster's New International Dictionary, 1953 edition; Funk & Wagnalls New Standard Dictionary, 1956 edition; Reader's Digest Great Encyclopedic Dictionary; Van Nostrand's Scientific Encyclopedia, third edition; The

Harper Encyclopedia of Science, volume 2. For example, Webster's New International Dictionary states:

motor * * *.

*Elec.* A rotating machine which transforms electrical energy into mechanical energy. It consists of two principal parts: a field-magnet winding or a distributed-stator winding producing a magnetic field, and a rotating armature or rotor in whose conductors flow currents which are acted upon by the magnetic field and cause rotation. * * *

Van Nostrand's Scientific Encyclopedia classifies electric motors as direct current types including shunt, series, and compound, and alternating current types including synchronous and induction, both polyphase and single-phase (p. 1087). No mention is made in this grouping of geared motors.

Funk & Wagnalls New Standard Dictionary, 1956 edition, defines "gear" as follows:

gear. 1. *Mech.* The moving parts or appliances collectively that constitute some mechanical whole or set, linked, meshing, or fitted together, and commonly serving by their interaction to transmit motion or change its rate or direction. * * *

See also Reader's Digest Great Encyclopedic Dictionary and The Harper Encyclopedia of Science.

From these definitions, it appears that it is the function of a motor to convert electrical energy into mechanical energy and that it is the function of a series of gears to transmit motion or change speed or direction. Here both of these functions are done by a single unit. While Mr. Palmieri said that in his opinion the unit was a motor, he did not state whether such a unit is considered a motor in the commerce and industry of the United States. The authorities examined by the court indicate rather that it is known as a speed reducer or motor with a built-in speed reducer. Van Nostrand's Scientific Encyclopedia,

Encyclopaedia Britannica, and Machinery's Handbook, 16th edition.

Van Nostrand's Scientific Encyclopedia, page 732, lists "Gear, Motor, Speed Reducers." On page 1548, under "Speed Reducers" it is stated:

* * * One of the simplest forms of speed reducers is the gearmotor shown in Fig. 1. The unit illustrated is an "offset" reducer, in which a helical pinion on the end of the motor shaft drives a helical gear on the output shaft. The gear case is supported by the motor housing, and can be adjusted so that the output shaft is in the same horizontal plane as the motor shaft, or in several intermediate positions as well as in the position shown, thereby making the unit adaptable to various conditions of installation. * * *

* * * * * * *

Worm gear reducers are frequently employed for high velocity ratios and heavy power demands. The driving motor is generally connected to the input or worm shaft by means of some form of flexible coupling; the drive from the worm gear shaft, or output shaft, to the driven machine can be effected either through a flexible coupling for direct-connected drives, or by spur gearing, belt or chain drives.

In Encyclopaedia Britannica, volume 18, page 392, it is stated:

Gear Reduction Units. Motor speeds of 500 to 1,800 revolutions per minute are too high for industrial purposes, therefore, some mechanical reduction medium must be interposed between the motor and driven machine. The modern speed reduction gear unit has made possible the elimination of a multiplicity of chains, gears, shafting and belting for ratios such as 15 to 1 and higher. It utilizes four general types of gearing, namely, the worm, the spur, the herringbone and the bevel. * * * One of the most important factors in the successful operation of a speed reduction gear whether it be the worm, spur, herringbone or bevel type, is the connection to the motor and the connection to the shaft of the driven machine or apparatus. * * *

In Machinery's Handbook, pages 2023–2024, it is stated:

Motors with Built-in Speed Reducers.—Electric motors having built-in speed-changing units are compact and the design of these motorized speed reducers tends to improve the appearance of the machines which they drive. There are several types of these speed reducers; they may be classified according to whether they are equipped with a worm-gear drive, a regular gear train with parallel shafts, or planetary gearing.

The claims made for the worm-gear type of reduction unit are that the drive is quiet in operation and well adapted for cases where the slow-speed shaft must be at right angles to the motor shaft and where a high speed ratio is essential.

* * * * * *

Geared motors having built-in speed-changing units are available with constant-mesh change-gears for varying the speed ratio.

Planetary gearing permits a large speed reduction with few parts; hence, it is well adapted for geared-head motor units where economy and compactness are essential. The slow-speed shaft is in line with the armature shaft.

Two cases involving articles claimed to be electric motors have been cited by the parties. United States v. A. W. Fenton Company, Inc., 49 CCPA 45, C. A.D. 794, and Gamble Vargish & Co., dba Seabury & Co. v. United States, 57 Cust.Ct. 448, C.D. 2834.

The merchandise in the *Fenton* case was invoiced as "Hoover Electric Motor and Gear Assemblies" and was imported for use in Hoover electric floor polishers. It included

such components of an electric motor as an armature, field assembly, commutator, carbon brushes, and bear-

ings, along with a two-piece frame which holds those parts together as a unit. Each end of the armature shaft is provided with a worm adapted to drive a worm gear. Such a gear, mounted on a drive shaft, is held in driven connection with each of the worms by the frame. The two drive shafts are disposed in spaced parallel relationship, perpendicular to the armature shaft.

The court quoted the definition of electric motor in Webster's New International Dictionary, supra, and stated (p. 48):

> That the instant article contains the essential elements of a motor there can be no doubt, but it is equally clear that it includes features not essential to its function as a motor.

> Thus, the question is whether, regardless of those additional features, it remains only a motor, or whether those features remove it from that classification.

The court pointed out that the worm gear and drive shaft construction did not function solely to reduce the speed of the motor output but permitted driving the two polishing brushes of the polisher in predetermined side by side relationship from the single motor; and that the frame of the motor served as the housing for the other parts of the unit. It held that the article was actually the principal component of the complete polisher, stating (p. 49):

> It seems to us that the Customs Court erred as a result of treating the features which the article includes, in addition to the essentials set out in the definition of an electric motor, as doing no more than transforming the article into a gear motor or special purpose motor.

> The article does include a motor. It also includes gears and it clearly is designed for a special purpose. But the additional features it includes do more than make it a special type of motor. They dedicate it to one particular use as a part of a floor polisher. Since it is more than a motor, it is not proper-

ly classifiable as a motor for tariff purposes. It seems to us that to hold otherwise would be to expand by degree the term "motor" to a point beyond the accepted definition of that term. It would be difficult to find a stopping point.

In the instant case also the article has the essential elements of a motor but includes features not essential to its function as a motor. The gear train has an additional function—to reduce the speed and increase the torque. It is attached to but not integrated in the motor.

In Polks Model Craft Hobbies, Inc., et al. v. United States, 38 Cust.Ct. 422, Abstract 60545; H. H. Elder & Co. et al. v. United States, 48 Cust.Ct. 397, Abstract 66651; and James G. Wiley Co., etc. v. United States, 49 Cust.Ct. 199, Abstract 66961, it was held that certain small electric motors were not classifiable as parts of toys but were properly dutiable under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas.Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device, such as electric motors. In a later case, Gamble Vargish & Co., dba Seabury & Co. v. United States, supra, it was held that similar miniature motors, some with pinion gears and others with worm gears, were dutiable under paragraph 353, as modified, as articles having as an essential feature an electrical element or device, such as electric motors. In the course of the opinion the court stated (p. 453):

> It appears, upon examination of the sample in this case, that the pinion gear or worm gear is integrated physically in the motor, and, as far as we are able to determine, does not cause any substantial change in the use of the motor. Accordingly, in our opinion, the pinion or worm gear is a part of the motor, and the gear on the merchandise represented by plaintiff's exhibit 1 does not make the article anything "more than" a motor than would the presence or absence of a base de-

termine whether such an item is something more than a "motor."

The court also noted the language in the *Fenton* case, quoted above, and stated (p. 455):

This seems to indicate that there could be something called a gear motor or special purpose motor and that something which transformed an article into no more than a gear motor or special purpose motor would not take it out of the definition of motor, especially if, as in the case at bar, it did not dedicate the article to a particular use.

An examination of the sample in the *Gamble Vargish* case shows that the gear was an insignificant part of the motor, and according to the testimony, its presence did not change the use of the motor from that of the identical motors without gears involved in the earlier cases. In the instant case, on the other hand, the gear, gear box, or gear train is a substantial and complete separate unit which is attached to the motor proper. It has an important function, to reduce the speed and increase the torque of the motor so that it is useful where that particular speed and torque are required. According to the witness, the gear ratio in a particular geared motor would limit its application.

While the motor and gear assembly here does not have as many features in addition to the motor as were involved in the *Fenton* case, it does include more than a motor proper with an insignificant incidental feature such as was involved in the *Gamble Vargish* case.

In view of the definitions and statements in the authorities cited, and the lack of evidence as to how these units are regarded in the commerce and industry of the United States, we are of the opinion that it would unduly extend the term "motor" to the point beyond the accepted definition were we to hold the present articles to be "motors" for tariff purposes.

For the reasons stated, the protest is overruled and judgment will be entered for the defendant.