(C.D. 4006)

American Laubscher Corp.
Alltransport, Inc., et al. } v. United States

United States Customs Court, First Division

(Decided April 27, 1970)

*Barnes, Richardson & Colburn* (*James S. O'Kelly* and *Earl R. Lidstrom* of counsel) for the plaintiffs.

*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Herbert T. Posner*, trial attorneys), for the defendant.

Before WATSON, MALETZ and RE, Judges

MALETZ, Judge: These protests, consolidated for trial, involve the question as to the proper classification of certain pinions and gears that were imported from Switzerland via the port of New York in 1966 and 1967. The articles covered by protest 67/15062 were classified by the government under item 720.94 of the Tariff Schedules of the United States as parts of clock movements other than marine chronometers, and duty was assessed at 32.5 percent ad valorem. The articles covered by protest 67/78127 were classified by the government under item 730.93 of the tariff schedules as parts of munitions of war, with duty at 18 percent ad valorem.[1]

Plaintiffs contend that all of the imported pinions and gears are properly classifiable under item 680.45 as parts of fixed ratio speed changers, dutiable at 9 percent ad valorem. Defendant, on the other hand, argues that the gear trains, in which the importations function as parts, are not commonly or commercially known as "fixed ratio speed changers" and hence are not encompassed within that term. We agree with plaintiffs and sustain the protests.

The relevant portions of the statutes relied upon by the parties are:

Tariff Schedules of the United States

Classifications:

Schedule 7, Part 2, Subpart E:

Other parts for watch or clock movements:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

---

[1] The government concedes that the classification of the pinions and gears covered by entries 597781 and 597355 of protest 67/15062 is incorrect and, further, that the pinions and gears involved in those entries are identical to the pinions and gears covered by protest 67/78127. In addition, the parties agree that the articles covered by protest 67/78127 and those covered by entries 597781 and 597355 of protest 67/15062 are chiefly used as parts of a fuse which, in turn, are parts of ammunition or munitions of war.

For clock movements:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

720.94 For other movements _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 32.5% ad val.

Schedule 7, Part 5, Subpart A:

Bombs, grenades, torpedoes, mines, guided weapons and missiles and similar munitions of war, and parts thereof; ammunition, and parts thereof:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

730.93 Other _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 18% ad val.

Claim:

Schedule 6, Part 4, Subpart J, as amended:

Gear boxes and other speed changers with fixed, multiple, or variable ratios; pulleys, pillow blocks, and shaft couplings; torque converters; chain sprockets; clutches; and universal joints; all the foregoing * * * and parts thereof:

Gear boxes and other speed changers, and parts thereof:

680.45 Fixed ratio speed changers multiple and variable ratio speed changers each ratio of which is selected by manual manipulation, and parts thereof _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 9% ad val.

The record shows that a pinion is an article made from a blank shaft in which teeth are cut, while a gear is made from a flat disk with teeth cut into its circumference. Though pistons and gears differ in physical appearance, there is practically no functional difference between the two.

One group of the imported pinions and gears was used in the manufacture of elapsed time indicators which are devices or meters designed to register the amount of time that has passed from one occurrence or reference point to another. Such indicators are widely used in military aircraft and ground-support equipment for the purpose of measuring the amount of time the equipment has been in operation.

The principal components of the indicator are an electric motor, a gear train and a numbered wheel. The imported pinions and gears are used in the gear train assembly which is located between the motor and numerical indicators. The purpose of the gear train is to reduce the rotational speed of the motor to obtain the desired rotation of the numbered wheel at the other end of the gear train. For example, the motor attached to an elapsed time indicator in evidence turns at a rate of 3,000 rpm. This speed is reduced by the gear train to the point

where the fastest speed at which the numerical indicator will turn is one revolution per hour, and the slowest speed, one revolution per 10,000 hours.

The speed of the motor is reduced by arranging the pinions and gears in such a sequence that, by reason of the number of teeth of each pinion and gear assembly, each pinion and gear assembly in the train will revolve slower than the one preceding it. By a process of repetition, the speed of the motor is thus reduced across the train and the rotational speed at the end of the gear train is slower than the speed at the beginning.

The gear train in the elapsed time indicator reduces the speed of the motor at a fixed ratio. In other words, by use of a certain combination of gears and pinions, and given a fixed motor speed, the speed at the end of the gear train is always the same and will remain constant as long as the assembly remains unchanged.

The other pinions involved in these cases are used in the manufacture of the M–125 booster and safety device which is part of the fuse mechanism of an ammunition shell. The M–125 booster has a twofold purpose. First, it is designed to delay the arming of a shell until the shell travels a predetermined distance beyond the gun mount, and second it assists in arming the shell. The booster contains a small explosive which when pierced with a firing pin, explodes and detonates the explosives that are in the shell itself.

The principal components of the M–125 booster are two spring-controlled detents, a rotor gear, a gear train and a balance escapement. The booster operates in the following manner: As a shell is fired, it spins and creates a centrifugal force. When the centrifugal force reaches a certain intensity, the detents, which hold the rotor gear in place, spring out and release the rotor gear. As a result of the centrifugal force, the rotor gear, which is attached to the gear train and is its driving force, begins to turn. The gear train reduces the rotational speed of the rotor gear and thus delays the arming of the booster. When the rotor gear has turned to a certain point, its detonator is exposed and the booster becomes armed and part of the explosive train of the shell.

The gear train performs an essential function in the booster, since the rotor would turn almost instantaneously to armed position in the absence of some mechanism for reducing its rotational speed. That mechanism is the gear train which changes the speed of the rotor gear at a fixed ratio.

The importations are referred to in trade and commerce as gears and pinions or wheels and pinions; they are not called machines.

Against this background, the parties agree that the single issue is whether the imported pinions and gears are covered by the provision in item 680.45 for fixed ratio speed changers and parts thereof. In this connection, plaintiffs concede that the articles are, in a tariff sense, parts of clock movements under 720.94, or parts of ammunition or munitions of war under 730.93. They contend, however, that item 680.45 is a "specific provision for such part" within the meaning of General Headnote 10(ij) of the tariff schedules and that that headnote, therefore, requires the merchandise to be classified under the specific provision therefor.[2]

On this point, the term "specific provision for such part" in General Headnote 10(ij) has been construed by this court as applicable to tariff provisions which describe an article by either name or specific function. *J. E. Bernard & Co., Inc.* v. *United States*, 59 Cust. Ct. 31, 36, C.D. 3060 (1967); *Foster Wheeler Corp.* v. *United States*, 61 Cust. Ct. 166, 178, C.D. 3556, 290 F. Supp. 375, 384–85 (1968). In *Bernard*, the question was whether certain parts of audio-frequency amplifiers were dutiable as "parts" of projectors, as classified, or under item 685.90 as other electrical apparatus for making or breaking electrical circuits, as claimed. The court sustained the protest, stating (59 Cust. Ct. at 36):

> The merchandise at bar, represented by exhibits 1 through 9, 11, 12, and 14, appears to be dutiable as claimed since it is covered in each instance by statutory language that is clearly "specific" in providing for each article by name or *specific function.* With respect to exhibit 13, we likewise believe that the language of item 685.90 providing for "* * * other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels * * *" is language that is sufficiently specific so as to meet the test of General Interpretative Rule 10(ij) in that it not only *describes* a group of articles but also *the specific functions they perform.* They are thus described by function as specifically as those in the item described by name. [Emphasis added.]

Applying this rationale here, it is evident that the provision invoked by the plaintiffs in the present case—"Fixed ratio speed changers * * * and parts thereof"—meets the test of General Headnote 10(ij) as a specific provision, since it describes a group of articles by the specific function they perform. Thus, if the imported pinions and gears fall within the description of fixed ratio speed changers or parts of fixed ratio speed changers, they are encompassed within item 680.45 as claimed.

[2] General Headnote 10(ij) provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

As set out previously, the imported pinions and gears are used in the gear train assembly of both elapsed time indicators and booster and safety devices. In the elapsed time indicator, the function of the gear train is to change the rotational speed of the motor at a fixed ratio; similarly, in the booster and safety device, the function of the gear train is to change the rotational speed of the rotor gear at a fixed ratio.

Moreover, it is clear that a gear train is a type of speed changer. In *Servo-Tek Products Co., Inc.* v. *United States*, 61 Cust. Ct. 224, C.D. 3581 (1968), *aff'd*, 57 CCPA 13, C.A.D. 969 (slip op. Nov. 6, 1969), it was held that a geared motor consisting of a motor and gear train securely fastened together into a single unit was not a motor for tariff purposes and was properly classified under paragraph 353 of the Tariff Act of 1930 as an article having as an essential feature an electrical element or device. In reaching this conclusion, this court found that the function of a motor is to convert electrical energy into mechanical energy, whereas the function of a gear train is to transmit motion or change speed or direction. The court referred to a number of authorities, as follows, describing a gear train as a speed reducer or speed changer (61 Cust. Ct. at 230–31):

> Funk & Wagnalls New Standard Dictionary, 1956 edition, defines "gear" as follows:
>
> Gear. 1. *Mech.* The moving parts or appliances collectively that constitute some mechanical whole or set, linked, meshing, or fitted together, and commonly serving by their interaction to transmit motion or change its rate or direction. * * *
>
> * * * * * * *
>
> Van Nostrand's Scientific Encyclopedia, page 732, lists "Gear, Motor. Speed Reducers." On page 1548, under "Speed Reducers" it is stated:
>
> * * * One of the simplest forms of speed reducers is the gear-motor shown in Fig. 1. The unit illustrated is an "offset" reducer, in which a helical pinion on the end of the motor shaft drives a helical gear on the output shaft. The gear case is supported by the motor housing, and can be adjusted so that the output shaft is in the same horizontal plane as the motor shaft, or in several intermediate positions as well as in the position shown, thereby making the unit adaptable to various conditions of installation. * * *
>
> * * * * * * *
>
> Worm gear reducers are frequently employed for high velocity ratios and heavy power demands. The driving motor is generally connected to the input or worm shaft by means of some form of flexible coupling; the drive from the worm gear shaft, or output shaft, to the driven machine can be effected either through a flexible coupling for direct-connected drives or by spur gearing, belt or chain drives.

In Encyclopaedia Britannica, volume 18, page 392, it is stated:

Gear Reduction Units. Motor speeds of 500 to 1,800 revolutions per minute are too high for industrial purposes, therefore, some mechanical reduction medium must be interposed between the motor and driven machine. The modern speed reduction gear unit has made possible the elimination of a multiplicity of chains, gears, shafting and belting for ratios such as 15 to 1 and higher. It utilizes four general types of gearing, namely, the worm, the spur, the herringbone and the bevel. * * * One of the most important factors in the successful operation of a speed reduction gear whether it be the worm, spur, herringbone or bevel type, is the connection to the motor and the connection to the shaft of the driven machine or apparatus. * * *

In Machinery's Handbook, pages 2023–2024, it is stated:

Motors with Built-in Speed Reducers.—Electric motors having built-in speed-changing units are compact and the design of these motorized speed reducers tends to improve the appearance of the machines which they drive. There are several types of these speed reducers; they may be classified according to whether they are equipped with a worm-gear drive, a regular gear train with parallel shafts, or planetary gearing.

The claims made for the worm-gear type or reduction unit are that the drive is quiet in operation and well adapted for cases where the slow-speed shaft must be at right angles to the motor shaft and where a high speed ratio is essential.

 \* \* \* \* \* \* \*

Geared motors having built-in speed-changing units are available with constant-mesh change-gears for varying the speed ratio.

Planetary gearing permits a large speed reduction with few parts; hence, it is well adapted for geared-head motor units where economy and compactness are essential. The slow-speed shaft is in line with the armature shaft.

The decision in *Servo-Tek Products* is thus a clear finding by this court that a gear train is a type of speed changer. In addition, since the testimony shows that the imported pinions and gears are dedicated to use in gear trains, it follows that they are parts of speed changers.

Defendant argues, however, that plaintiffs' claim is foreclosed because they failed to show that the gear trains in which the importations function as parts are commonly or commercially known as "fixed ratio speed changers." We see no merit to the argument. For the term "fixed ratio speed changer" does not describe a particular article *eo nomine*, but rather describes a class of articles by function. See *J. E. Bernard & Co.* v. *United States*, 59 Cust. Ct. at 36. And in this respect a gear train (as we have seen) is a type of speed changer. See *Servo-Tek Products Co., Inc.* v. *United States*, *supra*, 61 Cust. Ct. at 230–31.

Defendant further argues that the provision of item 680.45 for

"fixed ratio speed changers" covers merchandise formerly classified under paragraph 372 of the Tariff Act of 1930 as machines not specially provided for. See *Tariff Classification Study, Schedule 6*, p. 256 (1960) ; H. Rept. 342 (89th Cong., 1st Sess.), p. 32 (1965). In view of testimony in the record that gear trains are not known as machines in trade and commerce, defendant asserts that gear trains were not intended by Congress to be included under the provision for fixed ratio speed changers since that provision, it says, applies only to machines. It is true that subpart J of part 4, schedule 6, under which item 680.45 appears, bears the heading : *Parts of Machines*. However, the *Tariff Classification Study, supra*, p. 275, states the following with regard to this subpart :

> This subpart covers a miscellaneous group of specific provisions for certain articles which are either parts of machines *or in general related to machinery*. Some of the products are covered by specific provisions in the tariff act but most of the provisions are new. [Emphasis added.]

In sum, though an article may be related to machinery only generally, it may still qualify as a part of a fixed ratio speed changer—provided, of course, it possesses the other necessary characteristics.[3]

We conclude, in short, that the imported pinions and gears come within the purview of item 680.45 as parts of fixed ratio speed changers. Further, that provision is more specific than the provision in item 720.94 for parts of clock movements because of the following considerations : The gear train, although a part of a clock movement, is specially provided for as a fixed ratio speed changer. In that circumstance, under the principle laid down in *Foster Wheeler Corp.* v. *United States*, 61 Cust. Ct. 166, 176, C.D. 3556, 290 F. Supp. 375, 383 (1968), the provision for parts of this gear train must be deemed more specific than the provision for parts of clock movements. For as the court stated in *Foster Wheeler* "[w]here a particular part of an article is provided for specially, a part of that particular part is more specifically provided for as a part of the part than as a part of the whole." *Ibid*. See also e.g., *C. F. Liebert* v. *United States*, 60 Cust. Ct. 677, 685–86, C.D. 3499, 287 F. Supp. 1008, 1014–15 (1968). For the same reason, the parts provision in item 680.45 is more specific than the provision in item 730.93 for parts of ammunition or munitions of war.

The protests are sustained, and judgment will be entered accordingly.

---

[3] In view of this conclusion, we need not reach the question of whether gear trains are parts of machines in and of themselves. Nevertheless, it is interesting to note that the *Encyclopaedia Britannica* (1970 ed.) states that "Gears are *machine parts*, operating in pairs * * *. The smaller of a gear pair is called the pinion and the larger is the gear." [Emphasis added.]