ROLLIX BEARING, INC., Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 85–11–01575.

United States Court of International Trade.

Jan. 24, 1991.

Sonnenberg, Anderson, O'Donnell & Rodriguez (Thomas J. O'Donnell, Mary E. Gill, and R. Kevin Williams), Chicago, Ill., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Div., Civil Div., U.S. Dept. of Justice (Susan Burnett Mansfield), for defendant.

## OPINION AND JUDGMENT

CARMAN, Judge:

Plaintiff, Rollix Bearing, Inc. ("Rollix") contests the classification and liquidation of its merchandise, geared slewing rings, pursuant to section 514, of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (1982). The United States Customs Service ("Customs") denied the protest pursuant to 19 U.S.C. § 1515(a) (1982), and a summons was timely filed. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a) (1982). After careful examination of the evidence presented at trial, the arguments of the parties, the tariff schedules, the case law, and other relevant authorities, this Court holds that the United States Customs Service improperly classified the subject merchandise as machinery

parts not containing electrical features and not specially provided for as item 681.39, Tariff Schedules of the United States ("TSUS") (1983), dutiable at the rate of 7.6% *ad valorem* and finds the correct classification to be TSUS item 680.49 (1983) as parts of fixed ratio speed changers, dutiable at the rate of 3.5% *ad valorem.*

## BACKGROUND

The issue presented in this case pertains to the proper classification for customs duty purposes of geared slewing rings imported by Rollix Bearing, Inc., now Defontaine, Inc., from France into the United States. As demonstrated at trial by the samples in evidence, the main components of the merchandise consist of an inner and outer ring, one of which has gear teeth, and bearing elements, such as ball rings or cylindrical rollers.

Initially, the geared slewing rings were classified by Customs under TSUS item 657.25 as articles of iron or steel, not coated or plated with precious metal. Rollix protested Customs' initial determination. Customs, in a decision on application for further review of the protest, ultimately determined that the merchandise should have been classified under TSUS item 681.39 as machinery parts not containing electrical features and not specially provided for based on the reasoning that TSUS item 681.39 is more specific than TSUS item 657.25. *Post–Trial Brief for the United States, Defendant* at 20 ("*Defendant's Brief*"). Because the rate of duty required under TSUS item 681.39 was the same as that required under TSUS item 657.25, Customs denied the protest in full.

Subsequent to Customs' reclassification of geared slewing rings, the defendant submitted two alternative classifications in a counter claim which was dismissed by this Court. The defendant advances two alternative classifications to the classifications made by Customs which are TSUS item 680.37 as ball bearings and parts thereof and TSUS item 680.39 as other bearings.

Rollix brought this action and contends that the merchandise is properly classifiable under TSUS item 680.49 as parts of fixed ratio speed changers.

## CONTENTION OF THE PARTIES

Plaintiff contends that its merchandise, geared slewing rings, should be reclassified as parts of a fixed ratio speed reducer, a kind of speed changer that operates in fixed ratios, under TSUS item 680.49, because TSUS item 680.49 more specifically describes the geared slewing ring than does Customs' classification TSUS item 681.39. In addition, because Customs has submitted an alternative claim, plaintiff argues that Customs should no longer have the benefit of presumption of correctness, as applied in the holding of *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878, *reh'g denied,* 739 F.2d 628 (Fed.Cir.1984). Finally, plaintiff contends that the Brussels Tariff Nomenclature is applicable to its TSUS classification under TSUS item 680.-49.

Defendant contends that the geared slewing rings at issue should be properly classified under TSUS item 681.39 as machinery parts not containing electrical features and not specially provided for. Defendant further contends that the Brussels Tariff Nomenclature does not support plaintiff's classification under TSUS item 680.49.

In the alternative, defendant suggests that the geared slewing rings at issue could be properly classified under either TSUS item 680.37 as ball bearings or TSUS item 680.39 as other bearings.

## DISCUSSION

### *Presumption of Correctness*

A presumption of correctness exists in favor of Customs' classification of an imported product and the burden of proof rests upon the party challenging the classification. 28 U.S.C. § 2639(a)(1) (1982); *Jarvis Clark,* 733 F.2d at 878. This presumption of correctness pertains not only to Customs' final classification, but also to every element necessary to support that determination. *United States v. New York Merchandise Co., Inc.,* 58 CCPA 53,

58, C.A.D. 1004, 435 F.2d 1315, 1318 (1970); *Schott Optical Glass, Inc. v. United States*, 82 Cust.Ct. 11, 15, C.D. 4783, 468 F.Supp. 1318, 1320, *aff'd*, 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979). In order to determine whether Customs' classification is correct, this Court must consider Customs' classification both independently and in comparison with the plaintiff's alternatives. *Jarvis Clark*, 733 F.2d at 878.

The presumption of correctness pertains to Customs' final classification. *United States v. New York Merchandise Co., Inc.*, 58 CCPA 53, 58, C.A.D. 1004, 435 F.2d 1315, 1318 (1970). Defendant agrees that the final classification decision of the Customs Service was that the merchandise was properly classified under TSUS item 681.39. Therefore, a presumption of correctness attaches to Customs' classification of the subject merchandise under TSUS item 681.- 39 as machinery parts not containing electrical features and not specially provided for, and the plaintiff carries the burden of proving that this classification is not correct.

■ As to the government's alternative classifications, TSUS items 680.37 and 680.- 39, there is no presumption of correctness. In *J.M. Rodgers Co., Inc. v. United States*, 59 Cust.Ct. 91, C.D. 3084 (1967), the court rejected the government's alternate claims by stating:

Where defendant asserts a claim in defense, different from the liquidation classification, the burden is on defendant to prove it. The presumption of correctness ... does not extend to a new claim urged by defendant. [citations omitted.] It is no part of plaintiff's case to meet every possible unsupported classification defendant can think of.

*Id*. at 95.

■ This Court finds that plaintiff has overcome the presumption of correctness attached to Customs' classification under TSUS item 681.39. Furthermore, this Court finds that plaintiff has met its burden in convincing this Court that the subject merchandise, geared slewing rings, should be classified under TSUS item 680.- 49 as parts of a fixed ratio speed changer.

The following are the pertinent provisions of the Tariff Schedule:

*Customs' Original Classification:*

Schedule 6, Part 3, Subpart G (1983): Articles of iron or steel, not coated or plated with precious metal:

. . . . . .

 Other articles:

. . . . . .

 Other:

. . . . . .

657.25 Other . . . . . .7.6% ad val.

*Customs' Final Classification:*

Schedule 6, Part 4, Subpart J (1983): 681.39 Machinery parts not containing electrical features and not specially provided for ... 7.6% ad val.

*Customs' Second and Third Alternative Claim:*

Schedule 6, Part 4, Subpart J (1983): Ball or roller bearings, including such bearings with integral shafts, and parts thereof:

680.37 Ball bearings, and parts thereof . . . . . .11% ad val.

680.39 Other . . . . . . . . . . . . . . .9.8% ad val.

*Plaintiff's Claimed Classification:*

Schedule 6, Part 4, Subpart J (1983): Gear boxes and other speed changers with fixed, multiple, or variables, or variable ratios; pulleys and shaft couplings; pillow blocks; flange, take-up, cartridge, and hanger units; torque converters; chain sprockets; clutches and universal joints; all the foregoing (except parts of agricultural or horticultural machinery and implements provided for in item 666.00 and parts of motor vehicles, aircraft, and bicycles) and parts thereof:

 Gear boxes and other speed changers, and parts thereof:

 Fixed ratio speed changers, multiple and variable ratio speed changers each ratio of which is selected by manual manipulation, and parts thereof:

680.49 Other . . . . . . . . . . . . . . .3.5% ad val.

According to Plaintiff's Exhibit 1 (Rollix's Company Catalogue on Slewing Rings), slewing rings are an essential element in numerous mechanical assemblies. They are used in the application of amusement rides, concrete pumps, draglines, dock cranes, forklift trucks, hydraulic shovels, loading dock cranes, mobile cranes, off-

shore cranes, tower cranes, and turntable ladders. *Id.* at 29.

Plaintiff's Exhibit 2, *supra,* at 5, defines a geared slewing ring as consisting of an outer and inner ring, one of which has gear teeth; bearing elements (ball rings or cylindrical rollers) separated by spacers; a plug and a retaining pin to keep the rolling elements in position after insertion; and a seal to retain the lubricant in the slewing ring. *Rollix's General Catalogue for Slewing Rings* at 5 (Plaintiff's Exhibit 2); *Rotek's Design Guide and Catalogue on Large Diameter Ball and Roller Bearings* at 5, 7 (Defendant's Exhibit F).

## Figure A is an example of a slewing ring.

The slewing ring has an inner and outer ring; it operates by having one ring attached to a base structure and the other to a rotating structure. Tr. at 119. Plaintiff's witness, Mr. Michael Strand, general manager of Defontaine (formerly known as Rollix), testified that gear teeth are cut into the outside of the outer ring or the inside of the inner ring. Trial Transcript at 23, 199 ("Tr."). Both plaintiff's witnesses, Dr. Carl S. Larson and Mr. Strand, testified that the bearing elements reduce friction and allow ease of rotation under a load. Tr. at 53, 133, 144.

It is an uncontested fact that a slewing ring is used in rotating various structures mounted upon it. Pretrial Order, Schedule C, No. 5. Dr. Larson testified that different mounting methods of a slewing ring neither affect the function of the slewing ring nor its ability to transmit power. Tr. at 128, 132. Dr. Larson identified the size of the gears and the shape and strength of the teeth as the only factors which limit the amount of torque and power transmittable by a set of gears. Tr. at 128. He explained that the size of the ring gear and the number of its teeth control the amount of speed reduction and the amount of power which can be transmitted from the pin-

ion to the rotating structure. Tr. at 260. Furthermore, Dr. Larson testified that the greater the torque, the greater the strength required by the gears to transmit this torque. Tr. at 140.

Dr. Larson listed the components of a slewing ring system as consisting of a prime mover (motor), a gear transmission between the motor and the pinion, a pinion, and a slewing ring. Tr. at 120. The gear transmission in a slewing ring is normally a fixed ratio speed reducer. Tr. at 123.

It is an uncontested fact that rotation of a slewing ring is accomplished by a pinion gear or worm gear which engages the teeth of the slewing ring. Pretrial Order, Schedule C, No. 7. Mr. Strand testified that the drive pinion meshes with the gear on the slewing ring to rotate and position the mounted structure. Tr. at 24. The power to drive the pinion is supplied by a motor, which may be hydraulic, electric, or internal combustion. Pretrial Order, Schedule C, No. 8. The drive mechanism can be a motor attached directly to the pinion or a motor attached to a separate gear box that is attached to the pinion. Tr. at 43. Dr. Larson explained the operation of a gear box as a set of gears inside a box which serve to transmit the motion, power,

and torque of a motor through the gears to the output shaft of the gear box. Tr. at 134. *See* R.E. Trautschold, *Standard Gear Book* 5–6 (1935) (Defendant's Exhibit J). This type of drive mechanism is usually used since the speed of the motor is reduced in two stages. Tr. at 51.

Mr. Strand explained that if a motor operates at 1500 revolutions per minute (RPM), the first reduction occurs in the gear box attached to the motor and usually reduces the speed to around 25 RPM. Tr. at 51, 52. The second reduction occurs between the drive pinion and the slewing ring gear to reduce the speed from 25 RPM to 1 RPM. *Id.* The RPM must be reduced because the speed of the motor (1500 RPM) is too high to be usable. *Id.* In addition, in moving a heavy load, the motor's speed must be reduced so the load can be rotated in a controlled manner. Tr. at 52.

Defendant's expert witness, Mr. Shapiro, testified that a gear driven slewing ring system is typically designed so that the drive motor and the pinion are mounted on the rotating portion of the machine and the geared ring of the slewing ring is attached to the fixed portion of the machine. Tr. at 204. The teeth of the geared slewing ring provide a pathway for the pinion to act on in causing rotation. *Id.* Mr. Shapiro found that Plaintiff's Exhibits 11 and 12, both of which were identified at trial as being a typical example of a model of a slewing ring and pinion combination at issue in this case (Tr. at 33–34), do not depict speed reducers. Tr. at 217–18. Mr. Shapiro did agree, however, that the pinion and geared race of the slewing ring in plaintiff's Exhibit 11 (model of a slewing ring and pinion combination) would be part of the overall speed reduction system of a crane which utilized toothed slewing rings to effect rotation. Tr. at 234–36. With respect to Exhibit 12, Mr. Shapiro opined that the pinion and geared slewing ring would not be part of the overall speed reduction system but would be "part of the slewing system." Tr. at 236–37.

Defendant's Collective Exhibit C explains that a speed reduction unit is often used in industry because "[m]otor speeds of 500 to 1,800 revolutions per minute are too high for industrial purposes, therefore, some mechanical reduction medium must be interposed between the motor and driven machine. The modern speed reduction gear unit has made possible the elimination of a multiplicity of chains, gears, shafting and belting for ratios such as 15 to 1 and higher." *Id.* at 392.

Mr. Strand, plaintiff's witness, testified that a speed changer is a set of two or more gears that change the speed of the input shaft as compared to the speed of the output shaft. Tr. at 55. In addition, Dr. Larson, testifying for plaintiff, defined a speed changer as a device that alters the angular speed, usually with a series of gears, between the input and output shafts of the changer. Tr. at 134. He explained that a speed reducer is a particular kind of speed changer in which the output speed of the device (RPM) is lower than the input speed rotation of an object over a period of time. Tr. at 135. He concurred with the *McGraw–Hill Dictionary of Scientific and Technical Terms* 1508 (1978) (Plaintiff's Exhibit 13, at 14) that a speed reducer acts as "[a] train of gears placed between a motor and the machinery which it will drive, to reduce the speed with which power is transmitted." *Id.*

Mr. Strand explained that a gear is a circular toothed element which when meshed with a mating gear provides angular motion and transmits torque and power. Tr. at 47. In gears which operate in fixed ratios the number of teeth on the mating gear is fixed and not changeable. *Id.* The ratio is calculated or derived by dividing the number of teeth on the geared slewing ring by the number of teeth on the drive pinion. Tr. at 48. This gear ratio results in a reduction of speed between the drive pinion and the slewing ring. Tr. at 50–51.

Dr. Larson claimed that a geared slewing ring standing alone is not a speed reducer but is a part of a speed reducer. Tr. at 161–62, 182. Dr. Larson further testified that the slewing ring as identified in Plaintiff's Exhibits 11 and 12 is part of a speed changer since it transmits motion, torque,

and power from the input member to the output member. Tr. at 136, 182.

### "More Than" Issue

The government relies on *Robert Bosch Corp. v. United States,* 63 Cust.Ct. 96, 103, C.D. 3881 (1969), in which the court decided that where an article is significantly more diversified than as described by a specific statutory provision, it is not properly classifiable under that provision. The government contends that evidence established that the merchandise at issue has a significant bearing function that makes it more than parts of fixed ratio speed changers. To be a function that makes the slewing rings more or other than fixed ratio speed changers, the bearing function must be something other than a mere amplification or improvement on the gearing function. *Robert Bosch Corp.,* 63 Cust.Ct. at 104. It concludes that because the slewing ring has a significant bearing function, plaintiff has failed to overcome the presumption of correctness that attaches to Customs' classification.

The witnesses commonly agreed that the functions of the bearings in slewing rings is to facilitate rotation and reduce friction. It is uncontroverted that the gearing function of the subject merchandise takes place when the gear teeth of the pinion mesh with the gear teeth of the slewing ring, resulting in operation in a reduction of speed at a fixed ratio.

Plaintiff rebuts the government's "more than" argument by pointing out that all testimony at trial clearly established the fact that all speed changers of this type have a bearing function associated with them. The plaintiff argues that you cannot have a speed changer without a bearing, and, therefore, it is an essential component of the speed changer. Plaintiff notes that where an article incorporates a specific component which is necessary for the article to function, to make a "more than" argument is pointless. To further emphasize this argument, plaintiff analogises it to a motor in an automobile by "arguing that the geared slewing ring is 'more than' a speed changer because it contains a bear-

ing is like arguing that an automobile is 'more than' an automobile because it contains a motor even though all automobiles must contain motors." *Plaintiff's Reply Brief* at 4. Plaintiff concludes that the "more than" argument advanced by the defendant is incorrect because the bearing function performed by geared slewing rings is the usual bearing function which must be present in all speed changers.

This Court finds the contention of plaintiff more persuasive than that of defendant as to this issue. This Court finds that while slewing rings do have a bearing function, it is secondary to the primary gearing function of the slewing ring.

### Common Meaning

Defendant further asserts that to determine if an article is more or other than that provided for in a particular tariff provision, the common meaning of the term is important. *E. Green & Son (New York), Inc. v. United States,* 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971). The meaning of a particular tariff term is a question of law, while the determination of whether a particular article fits within that meaning is a question of fact. *Hasbro Indus., Inc. v. United States,* 879 F.2d 838, 840 (Fed.Cir.1989); *Stewart–Warner Corp. v. United States,* 748 F.2d 663, 664–65 (Fed.Cir.1984); *Daw Indus., Inc. v. United States,* 714 F.2d 1140, 1141–42 (Fed.Cir. 1983). Disputed meanings of a word in a tariff provision are resolved by ascertaining the common meaning of the word, from its commonly received and popular sense. *Schott Optical,* 82 Cust.Ct. at 16, 468 F.Supp. at 1321; *Trans–Atlantic Co. v. United States,* 60 CCPA 100, 102, C.A.D. 1088, 471 F.2d 1397, 1398 (1973); *United States v. Rembrandt Electronics, Inc.,* 64 CCPA 1, 5, C.A.D. 1175, 542 F.2d 1154, 1156 (1976). To determine the common meaning, in addition to relying upon its own understanding of the terms used, the Court may consult dictionaries, lexicons, the testimony of record, and other reliable sources of information as an aid to its knowledge. *United States v. C.J. Tower & Sons,* 44 CCPA 1, 4, C.A.D. 626 (1956);

*Pistorino & Co., Inc. v. United States*, 81 Cust.Ct. 37, 41, C.D. 4763, 461 F.Supp. 331, 334 (1978), *aff'd*, 66 CCPA 95, C.A.D. 1227, 599 F.2d 444 (1979); *Schott Optical*, 82 Cust.Ct. at 16, 468 F.Supp. at 1321.

Defendant maintains that the merchandise is not commonly thought of in terms of any gearing/speed reduction function, but rather it is commonly thought of in terms of its bearing function. The reason defendant cites for this contention is that the witnesses referred to slewing rings as bearings. In addition, defendant relies on the manner in which slewing rings are marketed. Testimony of the witnesses and exhibits at trial revealed that plaintiff advertises its slewing rings in the Thomas Register, a trade directory, as large diameter bearings. *See* Defendant's Exhibit D. A 1983 edition of "Machine Design", a professional magazine for machine designers, also refers to slewing rings as large diameter bearings. Tr. at 207–08. Thus, the defendant concludes that because slewing rings are commonly thought of as bearings and are not advertised as speed reducers or placed in the category of slewing rings or speed reducers in technical literature or advertisements, the bearing function makes it more or other than a fixed ratio speed changer.

Plaintiff argues that defendant's attempts to establish the common meaning of the term slewing ring are misguided and not at issue in this case because common meaning is an aid to understanding a tariff term. *See E. Green & Son*, 59 CCPA at 34, 450 F.2d 1396; *The Englishtown Corp. v. United States*, 64 CCPA 84, 87, C.A.D. 1187, 553 F.2d 1258, 1260 (1977). Plaintiff contends that a slewing ring is not a tariff term and, therefore, its common meaning is irrelevant in that sense.

■ Plaintiff further argues that the fact that slewing rings are not referred to as bearings is not determinative of their classification. The fact that an article is commercially known by a specific name which differs from a generic tariff description is insufficient to exclude that article from classification under the tariff designation. *See Ehrenreich Photo–Optical In-*

*dus., Inc. v. United States*, 10 C.I.T. 203, 212, 1986 WL 8880 (1986); *S.G.B. Steel Scaffolding & Shoring Co., Inc. v. United States*, 82 Cust.Ct. 197, 210, C.D. 4802 (1979). The court in *American Laubscher*, 64 Cust.Ct. 384, 390, C.D. 4006 (1970) rejected the government's argument that plaintiffs' claim was foreclosed because they failed to show that the gear trains in which the imported articles functioned as parts are commonly or commercially known as fixed ratio speed changers. The plaintiff contends that geared slewing rings are known by a variety of names, including ring gears, turntable bearings, swing gears, swing circles, turntables, large diameter bearings, rotation gears, rotation circles, etc.

Moreover, plaintiff contends that the marketing of a product is not determinative of its classification. *Venaire Shade Corp. v. United States*, 66 Cust.Ct. 469, 472, C.D. 4235 (1971). Plaintiff asserts that the nature of advertising is such that many factors other than the precise description and use of an article influence its marketing. Plaintiff concludes that the fact that the subject geared slewing rings, which are parts of fixed ratio speed changers, are advertised under a category other than fixed ratio speed reducers is irrelevant, because *in use* they always function solely as parts of fixed ratio speed reducers.

### Use Provision

■ A use provision prevails over a designation of general character without special limitations as to use or other qualifications and over *eo nomine* classifications. *See General Chain Belt Co. v. United States*, 46 CCPA 66, 70, C.A.D. 698 (1958); *Henley & Co., Inc. v. United States*, 49 CCPA 41, 45, C.A.D. 793 (1962). The Appellate Court in *United States v. Quon Co.*, 46 CCPA 70, C.A.D. 699 (1959) stated that "[o]f all things most likely to help in the determination of the identity of a manufactured article, ... use is of paramount importance." *Id.* at 73. The court in *American Laubscher* found that because pinions and gears "are dedicated to use in

gear trains, ... they are part of speed changers." 64 Cust.Ct. at 390.

In *American Laubscher*, the Customs Court considered the classification of pinions and gears used in the gear train assemblies of elapsed time indicators, ammunition boosters, and safety devices. The court determined that their proper classification was as parts of "fixed ratio speed changers" under TSUS item 680.45.[1] *American Laubscher*, 64 Cust.Ct. at 391. In the elapsed time indicators, the pinion and gear were used in the gear train assembly which was located between the motor and a numbered wheel. *Id.* at 386. The purpose of the gear train was to reduce the rotational speed of the motor to obtain the desired rotation of the numbered wheel. *Id.* In the ammunition booster and safety devices, the imported gears and pinions changed the rotational speed of the rotor gear at a fixed ratio. The pinions and gears functioned in much the same manner as the pinion and slewing ring in the present case: the speed reduction was dictated by the number of teeth of each pinion and gear, as it is in the slewing ring system.

The court in *American Laubscher* held that because the gears and pinions were dedicated to use in gear trains and because a gear train is a speed changer, the gears and pinions were parts of speed changers. *Id.* at 390–91. Plaintiff contends that like the gears and pinions in *American Laubscher*, the geared slewing rings are parts of speed changers.

This Court agrees with plaintiff. Geared slewing rings at issue in this case function as gears or parts of gearing systems. The purpose of the gear is to transmit motion, torque, and power from one member to another member. The geared slewing rings do just that and are therefore gears. Further, when the number of teeth on the merchandise is divided by the number of teeth on the drive pinion and the two gears mate, this gear ratio results in a reduction of speed.

This Court finds that the merchandise at issue, geared slewing rings, are used as parts of fixed ratio speed changers. This Court holds that because the merchandise is used as parts of fixed ratio speed changers, application of the use provision shall prevail; further, TSUS item 680.49 prevails over the *eo nomine* classifications alternatively claimed by the government under TSUS items 680.37 and 680.39.

### *Relatively More Specific Provision*

The restrictive clause "not specially provided for" in TSUS item 681.39 precludes classification of the slewing ring under item 681.39 if a more specific provision describes it. General Interpretive Rule 10 provides, in pertinent part:

> (c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it....

The court in *American Laubscher* found the merchandise at issue in that case more specific than the government's classification because it described a group of articles by the function it performs. *American Laubscher*, 64 Cust.Ct. at 388. The court in *Compania Azucarera Del Camuy, Inc. v. United States*, 62 Cust.Ct. 131, 132, C.D. 3696 (1969) found that the speed changer provision is a specific provision as distinguished from a general provision. Classification under TSUS item 680.49 requires that the article be used to change speed and it must do so measured by a fixed ratio.

This Court holds that TSUS item 680.49 is more specific than Customs' classification under the general basket provision of TSUS item 681.39 which covers machinery parts not containing electrical features and not specially provided for.

### *Legislative History and the Brussels Nomenclature*

 It is well settled that tariff acts must be construed to carry out the intent

---

**1.** In 1966 and 1967, when the pinions and gears were imported, item 680.49 was numbered 680.45.

of the legislature. *Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982); *Sandoz Chemical Works, Inc. v. United States,* 43 CCPA 152, 156, C.A.D. 623 (1956). The first place to look to establish the intent of Congress is the language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Id.; see Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 630 (Fed.Cir.1989).

During the drafting of the Tariff Schedules of the United States, the Tariff Commission studied other tariff, commodity, and classification systems. *Tariff Classification Study, Submitting Report* 8 (1960). Of the systems consulted, "[t]he 'Brussels Nomenclature' and the 'Standard Industrial Classification Manual' exerted the greatest influence on the arrangement of the proposed revised schedules." *Id.*

Because the Brussels Nomenclature had a significant influence on the TSUS, the Brussels Nomenclature and its explanatory notes are often referred to as a source of legislative history for the TSUS, when the statute is ambiguous and the language of the TSUS and the Brussels provisions are identical or similar. *See W.R. Filbin & Co. v. United States,* 63 Cust.Ct. 200, 210, C.D. 3897, 306 F.Supp. 440 (1969); *Pitney–Bowes, Inc. v. United States,* 59 Cust.Ct. 181, 192, C.D. 3116 (1967); *J.E. Bernard & Co., Inc. v. United States,* 60 Cust.Ct. 296, 303, C.D. 3372 (1968); and *Kyocera Int'l, Inc. v. United States,* 2 CIT 91, 527 F.Supp. 337, 440 (1981), *aff'd,* 69 CCPA 168, 681 F.2d 796 (1982).

A comparison of the language of the superior heading to TSUS item 680.49 and Heading 84.63 of the Brussels Nomenclature indicates significant similarity between the two provisions. The superior heading to TSUS item 680.49 (1983) provides for:

Gear boxes and other speed changers with fixed, multiple, or variable ratios; pulleys, and shaft couplings; pillow blocks; flange; take-up, cartridge, and hanger units; torque converters; chain sprockets; clutches and universal joints; all the foregoing (except parts of agricultural or horticultural machinery and implements provided for in item 666.00 and parts of motor vehicles, aircraft, and bicycles) and parts thereof.

Heading 84.63 of the Brussels Nomenclature covers:

Transmission shafts, cranks, bearing housings, plain shaft bearings, gears and gearing (including friction gears and gear-boxes and other variable speed gears), flywheels, pulleys and pulley-blocks, clutches and shaft couplings.

*Nomenclature for the Classification of Goods in Customs Tariff 1955* 164 (1959).

In March 1965 the Nomenclature Committee of the Customs Cooperation Council considered the appropriate classification for slewing rings under the Brussels Nomenclature. *Customs Co-operation Council Nomenclature Committee Summary* (Mar. 3, 1965) (Plaintiff's Exhibit 9). The Committee considered two alternative classifications for the slewing ring: Heading 84.62 as a ball or roller bearing and Heading 84.63 as gears or gearing. The Committee noted that:

Slewing rings on bearings are designed to absorb and transmit radial, axial, and tilting forces, and are used on cranes, excavators and other rotating equipment carrying large eccentric loads.

They consist of two or three rings of high tensile steel into which ball or roller races are machined; the purpose of those is not only to give ease of movement but also to withstand strain in two directions. Internal or external gears are machined directly into one of the bearing rings to accept the drive for the rotating machinery.

*Id.* at 1.

The Nomenclature Committee decided that slewing rings at issue before them "are essentially a combination of one or more ball or roller bearings of heading 84.62 and gears or gearing of heading 84.-63 [and] that their principal function is the transmission of rotary motion to the mobile

part of cranes, excavators or other machines on which they are mounted". *Id.* at 7. A majority of the Committee then decided "that these slewing rings derive their essential character from the transmission gear" and therefore, should be classified under 84.63. *Id.*

This Court finds that the language of TSUS item 680.49 and Heading 84.63 of the Brussels Nomenclature is similar. The Court also accords weight to the Brussels Committee ruling that found the slewing rings had more of a gearing function than a bearing function due mainly to the slewing rings' power transmission function.

### CONCLUSION

This Court holds, after having examined the evidence presented at the trial, the relevant statutes and authorities, and upon all other matters presented, that the merchandise at issue, geared slewing rings, are parts of fixed ratio speed changers and are properly classifiable under TSUS item 680.-49 as relatively more specific than the description set forth at TSUS item 681.39.

### ORDER

This case having been tried and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, AND DECREED that the classification and assessment of duties of the United States Customs Service are reversed and that proper classification is held to be TSUS item 680.-49 as relatively more specific than TSUS item 681.39, and it is further;

ORDERED, ADJUDGED, AND DECREED that the United States Customs Service shall reliquidate the entries in accordance with this opinion, and shall refund any excess duties paid together with interest, as provided by law.